We're going to move now to our final case of the day. This is Appeal 22-2000, United States v. Jose Oregon. We'll begin with oral argument on behalf of the appellant. Mr. Spivak, we'll recognize you. Good morning, Your Honors. Good morning. But for a regrettable, albeit criminal, lapse of judgment, Jose would be a great example of a great immigrant success story. We would be celebrating the extraordinary life that he has gone through. Born poor in Mexico, he began working, helped support his family when he was barely a teenager. When he was 15 years old, he came by himself to the United States and began working in his uncle's grocery store after school and would then do his homework at night. He didn't even speak English when he first came here. Eventually, he found great success in business and in his personal life and is presently, as you know, putting two of his children through college. Unfortunately, it was something that happened in between there that brings us here. Following a painful separation from his first wife, he went through a period of three years where he wasn't paying his income tax. The IRS then imposed a lien and it turned out he owed $60,000 in taxes and penalties and interest. At the time, still working at the grocery stores, he had no means to pay that. He had no credit. I think he had a car at the time that he bought that he was paying over 25% interest on the car loan. His sister had to buy him a phone. Feeling helpless, he then at that point agreed when this government informant came to him with this proposal to do this money laundering thing. As the court knows, Judge Kendall was not unsympathetic to Mr. Horgan. She imposed a below-guideline sentence and I'm well aware of the fact that the court is not inclined to reverse a below-guideline sentence. So why is this case different? This case is different because it's a completely different money laundering case. In the typical case, for instance, Judge Kendall spoke about that the offense was an aberration, but that was only half of it. What was going on in this case is this is a man who didn't set out to commit a crime. He had no intent to do something criminal when he went to this ranch and what was he doing? He was looking to see if he could find additional work so he could help pay off this IRS loan. He was still working for the grocery stores. He didn't know how he was going to pay the IRS. He was frightened of the IRS, like most of us are, and he didn't know what to do. Someone overheard him talking about that. That person turned out to be an informant and that person suggested to him that he get involved in this incident of money laundering. Mr. Spivak, it seems to me that you are just asking us to re-weigh the factors. The issues that you raise, I know you've crafted this in part as a procedural error, but the district judge considered the issues. She just didn't give the weight that you think they should be given. I do agree. I don't believe that she gave the weight that should have been given. Which goes to the substantively unreasonable, not the procedural error under our law. Yes. I think you said she gave short shrift to things. Why aren't you just asking us to re-weigh those factors, the disparity factor in particular? I think it should be back to the judge to consider. The one thing that didn't appear to be considered below was the government's involvement in this particular money laundering offense. I don't think the judge weighed that factor into it, that this was in fact something that was brought to him that he had no intent to be involved in and it was brought by the government. The government brought that and I think that's something that needs to be considered. If the government had never come to him through the informant... It sounds like you're making an entrapment argument. It's not. I do not want to make an entrapment defense and clearly he participated in the offense and he did it. He did it at a time when he was at a compromised state of mind, when he was scared and nervous and the government, even if unintentionally, the government took advantage of the fact that he was in a weakened state of mind. When he was in that state of mind, he agreed to do something that was completely something that he would never ever do before. In fact, we know that from the evidence because what happens is he doesn't even complete the one job. At some point, it's not like he was worried about being caught or like they were onto him. He finally comes to his senses and he stops. He doesn't even launder the entire amount of money. More than that, they try to get him to do other money laundering things and he says no. That's what he should have done in the first place, unfortunately, but that is one of those things that again makes this different and is things that I think the judge didn't weigh properly in this case. There's talk about how in a white collar case, defendants very often weigh the risk versus reward and that's why we have to have harsh sentences. That wasn't the sort of case that happened here. This was the kind of case where he was worried about the IRS. The money that he got, $10,000 for this 18 months in prison right now, went to pay for the IRS debt. One other thing and there's also, Judge, we talk about the general deterrence. One thing that I noted in our brief, there was a case out of the D.C. Circuit or D.C., I think the District Court. I'm not sure if I have the wrong site on it. I think I said it was a 2012 case. The white case is 2022. That was a case where the court in that case referred to the Judiciary Sentencing Information Platform. Judge Kendall in this case said that she didn't want to give him a lower sentence because it would be inconsistent or disparate with people that laundered the same amount of money. Well, in returning to this Judiciary Sentencing Information Platform, when we cite it, they include for 2017 to 2021, there were 132 offenders whose primary guideline was 2S1.1, which was Jose's guideline. The final offense level was 17, which was Jose's final offense level. And the criminal history category was 1. And of those people, and that excluded people who did receive cooperation credit, those people, 25% of them, got a sentence in the area of probation. So I think the judge is just plain wrong to indicate that it would be disparate. I don't think one in four getting probation is a disparate calculation. Would you like to reserve the remainder of your time? I would, Your Honor. Thank you. Thank you very much, Mr. Spivak. We'll now hear on behalf of the government from Mr. Ladd. Good morning. Robert Ladd for the United States. May it please the court. This court should affirm the defendant's sentence in this case. The district court did not abuse its discretion when it imposed a below-guidelines sentence. The district court considered properly all of the defendant's arguments and mitigation. It then proceeded to balance and weigh the 3553A factors. And when it did so, it fashioned a below-guidelines 18-month sentence as a result of that balancing. As Your Honor is aware that the district court enjoys wide latitude in what weight to give those 3553A factors. And in this case, the district court judge clearly balanced what it believed to be a serious offense versus the significant mitigation that defendant presented at his sentencing before reaching a below-guidelines sentence that adequately impacted all those factors. This court has never held a below-guidelines sentence to be unreasonably high. So the defendant bears a significant burden to establish that this, for the first time, is a case that merits the court reaching that conclusion. The district court did not abuse its discretion. And as Your Honor referenced, this appeal seems to be an attempt to simply re-argue the 3553A factors in this case. I know that counsel talked about these statistics from the JSIN with regards to what certain offenders, what this type of criminal history and offense level got as part of the sentence. And he talks about 25% not getting a period of incarceration. But the flip side of that is 75% of them did. He talks about the median sentence and the average sentence in his brief. This is a sentence that is well within the average and median ranges of that case. I know that he talked about the court stressing the need for deterrence. I'm sorry, stressing the need to not have an unwarranted disparity in this case. But if you look at the court's application of the factors, I think it seems clear that she's factoring in the 3553A factors when she's talking about that. There's the discussion, I can't give you what your attorney wants. I can't keep you out of prison because that would be too far of a disparity in sentencing people with this amount of money laundering. The very next sentence, that would not be appropriate as far as sending the message of promoting respect for the law. It's from the transcript. It's at 31. Counsel talked about the court not factoring in the peculiar circumstances of the offense. There is a significant argument at the sentencing proceeding about whether a four-point enhancement should apply for the defendant being in the business of laundering money. It's at this point where the defendant talked about these exact circumstances that were brought up here before your honors today. That this was, while not going so far as to say entrapment, this was something that was coerced upon him, that he was taken advantage of. And this is something that the court was aware of and considered when it fashioned the sentence. It talked about the peculiar circumstances of the offense. Didn't the court even say something that she initially didn't believe him, but came to believe him? When looking at his history and characteristics under 3553A, this was atypical. Exactly. And so, I think that the court adequately considered all of the arguments that Defendant's Counsel advanced today. If there are no further questions from the court, I just have one question I'm curious about. It doesn't have anything to do with what's in front of us on appeal, but I'm curious in looking at this. Why did it take the government four years to indict this? I don't know the answer to that question, Judge. It's something that's not in the record. I mean, all the conduct occurred between May and August, and it looks like the indictment doesn't come, maybe the arrest as well, until March of 19. From 15 to 19. I don't have the answer to that, Judge. I'm sorry. I don't either. I'm just curious. Okay, thanks. Thank you, Mr. Ladd. Mr. Spivak, let's recognize you now for rebuttal argument. Thank you, Judge. I think that 25 percent of the people in the same criminal history category for the same offense and the same guideline getting probation is indicative of the fact that giving probation to José wouldn't have caused any disparity in sentencing among like people that had the same sort of... I think that shows it wasn't disparate. I know, obviously, that the court has not yet or is certainly not inclined to reverse a low-guideline sentence to make it lower, and that's what we're asking. We're asking that this be the first time, because we are dealing with a completely odd... of money laundering, no intent to get involved in money laundering or any other offense until he meets this government agent who plants the seed in his mind at a time when he is in a compromised or vulnerable mental position. It shows that he is not the kind of person to want to do this because we know what happened. He didn't finish. And then when they wanted him to do more, where I guess in theory he could make more money, he refused. He didn't want to do it. That shows where his state of mind is. He didn't complete the one job. He stopped entirely on his own. He came to his senses. And so I think that... And you know how clumsy the money laundering was. I'll finish my thought just to say, Judge, you know, that he used things like his wife's and his personal checks and things like that, which pretty much show you how inept and clumsy he was in this. And this person wasn't a criminal, even though he obviously did something very wrong. Thank you, Your Honor. Thank you, Mr. Spivak. Thank you. Thank you, Mr. Ladd. We have the case taken under advisement, and that will close our hearings for today.